### JOSEPH v. BRAUDY.

1. SALE—EXECUTORY CONTRACT—IDENTIFICATION OF GOODS.

   Plaintiffs accepted in writing defendant's offer to sell them a quantity of scrap iron for a stated price per ton, as follows: From 650 to 700 tons of No. 1 wrought, seen by the purchasers' agent; about 30 tons of heavy mixed country steel, also seen by the agent; one car load of horseshoes; and one car load of flat steel sheet car rails. Defendant refused to ship, and plaintiffs brought replevin. The rails were not in defendant's yard when the agreement was entered into, and were not seen by the agent. *Held*, that, all of the items not being specifically identified by the agreement, title did not pass to the plaintiffs.

2. REPLEVIN—JUDGMENT—COLLUSION.

   A prevailing defendant in replevin, on waiving a return of the property, is entitled to nominal damages only, and not to a judgment for its value, where, a few minutes after the property was nominally turned over to the plaintiff by the sheriff, without in fact being removed from defendant's possession, it was delivered to third persons, acting in collusion with the defendant, upon a second writ.

Error to Kent; Grove, J.   Submitted February 3, 1897. Decided May 11, 1897.

Replevin by Joseph Joseph and another against Max Braudy.   From the judgment rendered, all parties bring error.   Reversed.

*T. J. O'Brien* and *James H. Campbell*, for plaintiffs.

*Frank A. Rodgers* (*Fletcher & Wanty*, of counsel), for defendant.

MOORE, J.   This is an action of replevin brought by plaintiffs to recover a quantity of iron they claim to have bought of defendant.   Trial was had before the circuit judge, who made a finding of facts and of law.   Both parties appeal.   The iron involved consisted of four piles of iron which lay in the yard of defendant.   The agent of the plaintiffs saw the iron June 19, 1895, and negotiated for its purchase, and the parties agreed upon terms.   To indicate their agreement, the following paper was drawn:

"Office of M. Braudy, Dealer in Old Rails, Scrap Iron, and Metals.   Office and Yard, 10 to 20 Alabama St.
                    "GRAND RAPIDS, June 19, 1895.
"JOS. JOSEPH & BROS.,
           Cincinnati, Ohio.—
   "*Gentlemen:*   We hereby accept the offers of your Mr. Leonard Joseph for the following material, f. o. b. cars Grand Rapids, we guaranteeing a rate of $1.80 gross ton to Muncie, Ind., and Marion, Ind. (Grant Co.):   From (650) six hundred and fifty tons to (700) seven hundred tons of No. 1 wrought, which has been seen by Mr. Leonard Joseph, at the price of $9.55 (nine dollars and fifty-five cents) per net ton, f. o. b. Grand Rapids; also, about (30) thirty tons heavy mixed country steel, as seen by Mr. Leonard Joseph, at the price of $8.25 (eight dollars and twenty-five cents) per gross ton, f. o. b. Grand Rapids; one car load of horseshoes, at $9.55 (nine dollars and fifty-five cents) per net ton, f. o. b. Grand Rapids; and one car load of flat steel sheet car rails, at $8.65 (eight dollars and sixty-five cents) per gross ton, f. o. b.

Grand Rapids, or f. o. b. point where rate is equivalent; terms cash.    We also agree to cancel all claims in regard to the transaction of iron and steel rails shipped to Lockport, Ills., Washington, Ind., Cincinnati, O., and Newburgh, O.

> "Yours, truly,
> "M. BRAUDY.

"Accepted:  J. J. & B., *per* LEONARD JOSEPH."

The paper was delivered to Leonard Joseph, who took it away.    Some correspondence ensued after this between the parties.    The iron was not shipped.    Plaintiffs deposited enough money in a bank at Grand Rapids to pay for the iron, which they authorized their attorney to draw out, and notified defendant that the iron would be paid for as fast as weighed, and requested him to ship the iron.    He refused to do so.    No formal tender was made of money to pay for the iron, and this suit was brought.    The circuit judge found that the title to the iron passed to the plaintiffs, but that they were not entitled to the possession of the iron at the time the suit was brought, because no payment or sufficient tender was made.

The first important question to be considered is, did the title to the property pass from defendant to plaintiffs? As bearing upon this feature of the case, in addition to what has already been said, the record discloses that June 26, 1895, defendant wrote plaintiffs, among other things:

"I have sold No. 1 wrought, and I told Leonard Joseph that I will ship the two piles as they run, which Mr. Leonard Joseph has seen, one pile that lies in the shop, and one that lies in the yard.  *  *  *  All that you have to do is to order me to ship so many car loads to the place you wish it shipped, to your order."

Later he wrote:

"Now, what I want you to do is to release me from the $1.80 rate, and I will ship the iron."

Still later he wrote:

"The iron, if you want it, has got to be shipped right off, as I do not sell iron to be delivered two or three months after."

Was the judge warranted in finding from this evidence that the title passed? It is urged upon the part of the defendant that the amount of the iron of the various qualities was not ascertained at the time the contract was made, and could not be told until the iron was drawn to the cars, and weighed. It is urged that the quality of the iron was subject to further scrutiny, and the contract provided in express terms for the payment in cash for the iron, delivered on the cars, and it also provided for the sale of one car load of flat sheet steel car rails, amount not stated, which had never been seen by plaintiffs or their agent, which was to be shipped from a point not then agreed upon, and that these things, taken in connection with the surroundings of the transaction, indicate that the parties did not intend the title to pass, and that it did not in fact pass. The case is difficult to place, as it is on the border line between the cases where the title unquestionably does pass and those where it does not. The contract is to be treated as an entirety. The property cannot be sufficiently identified so it can be said just what property was sold. It does not appear that the car load of flat steel sheet car rails was in the yard at Grand Rapids, or was ever seen by the agent of the plaintiffs; and the contract does not identify it from any other carload of flat steel sheet car rails. It cannot be said that the parties had agreed upon all of the specific property which was to be sold. We think the case is governed by *First Nat. Bank* v. *Crowley*, 24 Mich. 492; *Lingham* v. *Eggleston*, 27 Mich. 324; *Hahn* v. *Fredericks*, 30 Mich. 223 (18 Am. Rep. 119); Story, Sales, § 296; 2 Kent, Comm. 492, note $y$; and that the title did not pass from defendant to the plaintiffs.

The defendant waived a return of the property, and the trial judge gave him a judgment for over $7,000. The record shows that, after the writ of replevin was issued, the iron was not removed from the yard where it was found by the sheriff, and, though the return of the sheriff shows the iron was delivered to the plaintiffs, it in

fact never did go into their possession. A few minutes after the property was nominally turned over to the plaintiffs by the sheriff, a writ of replevin was put into the hands of the sheriff, which writ was sued out by Henry Silberman and others against Joseph Joseph and Samuel Joseph, and the property was delivered to the plaintiffs in the second suit. The record also discloses that the same attorneys who acted for the defendant in the first replevin suit appeared as attorneys for the plaintiffs in the second suit. The defendant in the first suit also appeared as bondsman for the plaintiffs in the second suit, so that we cannot resist the conclusion that the defendant in the first suit and the plaintiffs in the second suit were acting in concert. As the case now stands, the plaintiffs in the first suit had never had the title to the iron or the iron itself, or any proceeds from it, and are confronted by a judgment of more than $7,000 for something from which they never received any benefit. We do not think this judgment ought to stand. Defendant should have had a judgment for nominal damages and costs of the court below.

Judgment is reversed, and judgment entered here for nominal damages in favor of defendant; neither party to recover costs in this court.

The other Justices concurred.