CUNNINGHAM et al. v. METROPOLITAN LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1901.)

No. 919.

1. PUBLIC LANDS—CONFIRMATION OF HOMESTEAD CLAIMS—CONSTRUCTION OF STATUTE.

Act March 2, 1889 (25 Stat. 1008), forfeiting certain land grants made by congress to the state of Michigan to aid in the construction of railroads, but confirming the title of bona fide purchasers from the grantees, provided that such confirmation should not apply to any tract "upon which there were bona fide pre-emption or homestead claims on the first day of May, 1888, arising or asserted by actual occupation of the land under color of the laws of the United States, and all such pre-emption and homestead claims are hereby confirmed." *Held*, that such provision did not vest title in the pre-emption and homestead claimants to the land occupied by them, but merely confirmed their claims as they then stood, leaving it incumbent on them to comply with the requirements of the law in the usual manner before acquiring title.

2. SAME—RIGHTS OF HOMESTEAD CLAIMANT—CUTTING OF TIMBER.

A homestead settler, who has not perfected his right so as to entitle him to a patent, has no right or authority to cut and remove timber from the land, and can give no title to such timber as against the United States.

3. REPLEVIN—JUDGMENT—MICHIGAN STATUTE.

Under Comp. Laws Mich. 1897, § 10,675, which authorizes the court in an action of replevin to admit evidence showing the special property in, or partial ownership of, the property in controversy by either party, and to "render such judgment as shall be just between the parties," a court has power to direct a verdict for a defendant for nominal damages only, leaving the property taken under the writ in the possession of the plaintiff.

4. SAME—EQUITIES OF PARTIES.

A purchaser of logs from a homestead claimant of public lands subsequently adjudged to have no title or right to sell such logs, who purchased with knowledge that the seller's title was in controversy in the courts, is not equitably entitled to repayment from the rightful owner of the sum expended in cutting such logs as a condition to their recovery in replevin.

Evans, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Michigan.

This action of replevin was instituted by the defendant in error April 1, 1896, against plaintiffs in error, to recover possession of a large number of feet of pine logs cut by the plaintiff in error Cunningham from the S. W. ¼ of section 25, in township 44 N., of range 36 W., in the state of Michigan, which he had previously sold by contract to his co-plaintiff in error the Menominee Bay Shore Lumber Company, which, for convenience, will be called the "Bay Shore Lumber Company." The defendant in error claimed this timber by purchase of the same as standing timber from the Lake Superior Ship Canal, Railway & Iron Company, which, for convenience, will be called the "Canal Company," and which company claimed title to the disputed land. The case went to trial at the May term, 1898, of the United States circuit court at Marquette, Judge Severens presiding, and resulted in a verdict in favor of the defendants below for the full assessed value of the property in controversy, and which had been taken under the usual writ, and delivered to the plaintiff in the action below. In disposing of a motion for a new trial, which was sustained. Judge Severens said:

"Upon attentive consideration of this case, I am satisfied that a new trial must be granted. The reasons for this conclusion are as follows: The act of forfeiture of March 2, 1889, revested the title to the land in question in the United States. The saving clause therein contained confirmed Cunningham in his position as a homesteader, if he was such, in good faith, on the day therein specified, and gave him the right to acquire the title in the ordinary way. It did not give him the land out and out. This, it seems to me, is the correct view to take of the effect of that legislation; and it was, as it sufficiently appears, the view of the supreme court of the United States as shown by the last paragraph of its opinion in the case of Iron Co. v. Cunningham, 155 U. S. 385, 15 Sup. Ct. 103, 39 L. Ed. 183. His sale of the timber standing thereon, upon which the Menominee Bay Shore Lumber Company relies, was without right. The title to it was in the United States. If he had perfected his title to the land, his patent would probably have had relation back, and would have inured to the benefit of the purchaser of the timber. This he failed to do, and, as the doing of it involved his own personal conduct and action, there was no power to coerce him to reside upon the land, and otherwise comply with the requisites for gaining the title. The effect of the consent decree in the case of the bill filed by the United States originally against the Lake Superior Ship Canal & Iron Company, the Metropolitan Lumber Company, and the W. D. Wing Company, Limited, in which the Keweenaw Association, Limited, was subsequently added as party defendant, and the cross bill of the Lake Superior Ship Canal Company, etc., and the Keweenaw Association, Limited, against the United States et al., was to vest the plaintiff herein with such rights as the United States had in this land on the date of the filing of the original bill, which was December 19, 1890, and as between the plaintiff here and the United States the former was substituted to the rights of the latter in the timber which stood upon the land at the date last mentioned. This right to both land and timber was subject to be defeated if Cunningham had perfected his right to the title of the land; but, as he never did this, the title to both land and timber remains in the party to whom the title of the United States was transferred by the consent decree. The Menominee Bay Shore Company contends—and, I think, rightly—that the above-mentioned consent decree was not binding upon it, it not being party to that suit. It is not necessary to determine, however, how that was. It has no standing on which to object to the transfer by the United States of its rights in this land to any person whom it should choose. If it had not been for that transfer by the United States, the United States would have had the title to this timber, and the defendant would have been subject to such a suit as this on its behalf. It was not prejudiced by the transfer from the United States effected by the consent decree. From these considerations it is clear that the Menominee Bay Shore Lumber Company was not entitled to the judgment, either for the return of this property or for its value, as it had no title whatever. The former judg-

ment proceeded upon legal rulings which, I think, were erroneous, and the verdict and judgment must be set aside, and a new trial ordered. Whether or not, in view of the fact that the consent decree was entered after the commencement of this suit, there should have been a nominal judgment against the plaintiff, without a judgment for the return of the property or its equivalent, which would affect the question of the costs in the action, or whether the plaintiff should be entitled to a general verdict and judgment in its favor, is a question not necessary to be now determined. It may quite properly be deferred until the new trial shall take place. Let an order be entered in accordance with these conclusions."

The case was again brought to trial at the May term, 1900, of said court, Judge Wanty presiding. On the second trial Judge Wanty, accepting the views expressed by Judge Severens on the motion for a new trial, directed the jury to return a verdict in favor of the defendants below for nominal damages in the sum of six cents, but not for a return of the property or its value, to which direction exception was duly taken. Judgment was thereupon pronounced upon the verdict, and to reverse that judgment this writ of error was brought.

This parcel of land has been the subject of much controversy, beginning with an action of ejectment brought by the Canal Company against Cunningham, which was finally disposed of on writ of error in the supreme court of the United States. Iron Co. v. Cunningham, 155 U. S. 354, 15 Sup. Ct. 103, 39 L. Ed. 183. It may be stated briefly that the quarter section in dispute was a part of lands originally included in certain land grants made by congress to the state of Michigan to aid in the construction of railroads, and forfeited under certain conditions, not necessary to be named, by the act of congress of March 2, 1889, to the United States. The proviso to section 3 of the act of congress is in this language: "Provided, however, that where the original cash purchasers are the present owners this act shall be operative to confirm the title only of such said cash purchasers as the secretary of the interior shall be satisfied have purchased without fraud and in the belief that they were thereby obtaining valid title from the United States. That nothing herein contained shall be construed to confirm any sales or entries of lands, or any tract in any such state selection, upon which there were bona fide pre-emption or homestead claims on the first day of May, eighteen hundred and eighty-eight, arising or asserted by actual occupation of the land under color of the laws of the United States, and all such pre-emption and homestead claims are hereby confirmed." It was adjudged in that case that at the time of the passage of the act of March 2, 1889, forfeiting to the United States the titles to the lands granted to Michigan, neither the plaintiff nor the defendant had any title to the tract in controversy in that action. It was further adjudged that the words "homestead claim," as used in this act, included cases in which the claimant was, on the 1st of May, 1888, in actual occupation of the lands with a view of making a homestead of it, whether he had or had not made a formal application at the local land office, and that the defendant in error in that case, Cunningham, was, on the 1st of May, 1888, in occupation of the tract claimed by him, and, therefore, within the terms of the confirmatory act, a bona fide claimant of a homestead. It is unnecessary for the purposes of this case to notice the further progress of the ejectment case of the Canal Company against Cunningham, beyond saying that, after the case was disposed of by the supreme court of the United States, a new trial was taken by the company in the court below, as it had the right to do under the statute of the state of Michigan; and subsequently, by the consent of parties, a final judgment in said ejectment suit was rendered in favor of the company and against Cunningham. On October 19, 1890, a bill was filed in equity in the circuit court of the United States for the Northern division of the Western district of Michigan against the Canal Company, the Metropolitan Lumber Company, and others, in which it was alleged that the title to these lands was in the United States, and seeking to enjoin the cutting of timber thereon. Afterwards, on application of what is called the Keweenaw Association, Limited, which had acquired the title of the Canal Company subject to the sale of timber to defendant in error, it was allowed to appear as a defendant in the equity cause, and in the further

progress of the case cross bill and supplemental cross bill were filed, making various pre-emption and homestead claimants parties, and among them the plaintiff in error Cunningham; and that case finally resulted in a consent decree entered in November, 1896, disposing of all the questions involved, and settling all of the rights in issue. By this decree it was adjudged, in effect, that the title to the lands in controversy at the time of the commencement of that suit was vested in the Canal Company, and by due transfer since the commencement of the suit had become vested in said Keweenaw Association, Limited, and that none of the other parties, either plaintiffs or defendants, had any right, title, or interest in such lands, and that the decree should operate as a conveyance from the United States and all of the defendants of all right and title to said lands to said Keweenaw Association, Limited, the lands being particularly described. The contract by which plaintiff in error Cunningham agreed to cut and sell to the Bay Shore Lumber Company the timber in question was dated October 30, 1895. On November 14, 1895, the Bay Shore Lumber Company received a letter from the Canal Company, which, given just as written, is as follows:

"I have been informed that you have bought from Mr. W. A. Cunningham the pine timber on the southwest quarter of section 25, T. 44 N., R. 36 W., and are about to cut it. I could hardly believe it, because I suppose you must know that this land is part of the canal grant, and is claimed by the Keweenaw Association, Limited, as its property. The Keweenaw Association, Limited, has a right to a new trial, and has availed itself of that right, so that the title is by no means finally decided, and all means possible will be resorted to, to prevent the cutting of the timber by other parties. The title is in litigation in a suit between the United States and the Keweenaw Association, Limited, and in that suit we have an order allowing us to cut the timber, for which we have given bonds.

"I write you this, as it is possible that you may have been led to believe that the title to this tract is settled. Cunningham certainly has no title. It is either the land of the Keweenaw Association, Limited, or the land of the United States."

The receipt of the letter was acknowledged with the statement that it had been referred to the company's attorney, the letter of acknowledgment being as follows: "Your favor relating to the Cunningham timber is received, and referred to Mr. B. J. Brown." At this date the Bay Shore Lumber Company had advanced to Cunningham $290.46. The contract between Cunningham and the Bay Shore Lumber Company, among other stipulations, contained the following paragraph:

"The balance of the price for said logs shall be paid when all of said logs shall have been so delivered afloat in the Main Paint river, as aforesaid, and said first party shall have furnished to said second party evidence satisfactory to it that there is no valid adverse claim to said logs, or any part thereof; that the same are free and clear from all liens and incumbrances; and that there are no labor claims against the same which may be the subject of a lien thereon."

F. O. Clark and B. J. Brown, for plaintiffs in error.

D. H. Ball, for defendant in error.

Before LURTON, Circuit Judge, and CLARK and EVANS, District Judges.

CLARK, District Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The contention of plaintiffs in error is that the proviso to the act of congress of March 2, 1889, confirming the rights of homestead claimants, as construed by the supreme court of the United States in Iron Co. v. Cunningham, 155 U. S. 354, 15 Sup. Ct. 103, 39 L. Ed. 183, had the effect to change the inchoate homestead claim recognized by the act into an absolute title, so that thereafter home-

stead claimants in the situation of Cunningham stood clothed with full title without the necessity of the payment of any sum to the United States, or otherwise complying with such regulations and conditions as would have been required by law in the absence of the confirmatory grant contained in this act of congress. Under such circumstances it is insisted that Cunningham, being vested with full title, transferred to the Bay Shore Lumber Company, by his contract with it, a valid title to the timber cut and removed from the quarter section in dispute, and that, while the consent decree entered in the United States circuit court in the suit in equity is conclusive against Cunningham, such decree did not defeat or affect the title to this timber previously acquired by said contract. Indeed, the defense in the court below, and the right to judgment on the replevin bond against the plaintiffs for the value of the timber, are distinctly rested upon the soundness of the proposition that the act of congress vested in Cunningham by confirmation a complete and valid legal title. In this view we are unable to concur. Such a construction of the act would not be just to the United States, and it was certainly more than justice to a homestead claimant in Cunningham's situation required. It was the intention of congress to recognize such equitable considerations as existed in favor of those who had undertaken in good faith to acquire a homestead, and to comply with the general law and regulations of the land office in relation to such a claim, and enable them to go forward in the ordinary way, and perfect their right by compliance with the law. Any other interpretation would, as we have said, lead to manifestly unjust results, and such a construction is never to be adopted in the absence of words which clearly imply and necessarily require such a result. It is now well established, and not controverted, that, if Cunningham's position was that of a homestead claimant in possession of an inchoate right, not yet perfected so as to entitle him to a patent, he was without right or authority, until he perfected his claim to cut timber from the land, except so far as was necessary for cultivation of the land, and that by cutting and removing timber under such circumstances neither Cunningham nor a purchaser from him could acquire any right or title to timber so cut as against the United States. Railroad Co. v. Lewis, 162 U. S. 366, 16 Sup. Ct. 831, 40 L. Ed. 1002; U. S. v. Mock, 149 U. S. 277, 13 Sup. Ct. 848, 37 L. Ed. 732; Stone v. U. S., 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127; Shiver v. U. S., 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231. Such, also, has been the uniform ruling in many adjudged cases on the circuit. As the lands had been forfeited to the United States by the act of March 2, 1889, subject only to the homestead claim of Cunningham, and others in like situation, it results from the views we have expressed that the title to the timber on the quarter section in controversy was in the United States at the time of the contract between Cunningham and the Bay Shore Lumber Company; and when the timber was cut and removed a right of action existed in favor of the United States against Cunningham and his purchaser, the Bay Shore Lumber Company, for the value of all timber cut and removed; and this right, by the compromise decree

in the equity suit, was, in effect, vested in the plaintiff below, now the defendant in error; and, if the court below possessed power and authority to render such judgment as would meet the ends of justice, it is quite clear that the judgment below was right. The court's instruction to the jury to return a verdict in favor of the defendants below for nominal damages, and the judgment pronounced upon the verdict for such damages and the costs, were rulings in favor of the defendants to which they could not and did not object, their contention being that they were entitled to demand judgment for the value of the property taken under the writ, and delivered to and disposed of by the defendant in error. The principles governing the action of replevin as known to the common law have been modified by statutory enactments in Michigan. Section 10,675 of the Compiled Laws of Michigan of 1897 reads as follows:

"When either of the parties to an action of replevin at the time of the commencement of the suit shall have only a lien upon, or special property, or part ownership in the goods and chattels described in the writ, and is not the general owner thereof, that fact may be proved on the trial, or on the assessment of value, or on the assessment of damages in all cases arising under this chapter; and the finding of the jury, or court, as the case may be, shall be according to such fact, and the court shall thereupon render such judgment as shall be just between the parties."

It is not deemed necessary for the purposes of this case to set out other provisions in relation to the same subject. In Darling v. Tegler, 30 Mich. 54, the action was in replevin, and the plaintiff failed to maintain the suit for want of demand of possession before the institution of the suit, but it was established by the undisputed evidence that the defendant, while in lawful possession, was without any valuable interest in the property, and that the plaintiff was the true owner thereof. The supreme court of Michigan, on error, construing the above and other sections of the Compiled Laws of Michigan, held that, as the uncontroverted proof showed that the defendant was a possessor without any valuable interest in the property, he could recover no damages beyond his special interest, and, as the proof stood, merely nominal damages. Mr. Justice Campbell, speaking for the court, and referring to statutes regulating the action of replevin, observed that these statutes "limit the judgment to the just rights of the parties." "For the reason," continued the court, "that there is no foundation in the proofs or record for any damages, so much of the judgment as gives damages to defendant must be reversed, with costs of this court, and as to all other matters the judgment must be affirmed." See, to the same effect, the late case of Joseph v. Braudy, 112 Mich. 579, 70 N. W. 1101. Now, we do not understand that counsel differ as to the effect of this legislation in regard to the action of replevin. On the contrary, it is conceded, or, if not, is too evident to be denied, that the court, in giving judgment for either party in the action, is not limited to a judgment for the recovery of the property in specie, or damages for its value, but may, in the very language of the statute, "render such judgment as shall be just between the parties." It was suggested, rather than argued, that the Bay Shore Lumber Company was equitably entitled to such judgment as would reimburse it for the

amount actually paid to Cunningham under its contract with him for the purchase of the timber. It is not to be doubted that when that contract was entered into it was well understood that Cunningham's title was in dispute. The right to this quarter section of land was then, and had previously been, in an atmosphere of controversy; and the contract, as we have seen, contained a stipulation designed to protect the company, as between itself and Cunningham, against payment beyond a certain sum until any question as to his title should be removed; and within 15 days after the execution of the contract that company was distinctly notified by letter of the suit brought in equity by the United States, and that the question of title to this parcel of land was involved in that case. There is no doubt that the validity of Cunningham's title, and his right to sell and transfer timber on the land to the Bay Shore Lumber Company, were distinctly staked upon the proposition, so ably urged in this court, that the act of congress of May 2, 1889, had the effect to clothe Cunningham with a complete legal title to this quarter section of land. The position of the Bay Shore Lumber Company is not different from that of any other person or party acting under a mistaken view of the law, but with full knowledge of all the facts. It is certain that there is, in the legal sense, no equitable consideration in such a situation as this.

Judge EVANS, while entirely agreeing with the other views expressed, is of opinion that section 10,675 of the Michigan Statutes and the justice of the case require that, instead of directing a verdict of six cents, the circuit court should have charged the jury to find for the Menominee Bay Shore Lumber Company the amount it had expended under the contract with Cunningham in cutting the timber and putting it on the water, prior to notice of the consent decree; but the majority of the court agree that the result reached in the court below was substantially "just between the parties." Judgment affirmed.