## JOHN SIMS, *et al.*, V. LEWIS MEAD.

1. CHATTEL MORTGAGE; *Sufficient Description.* Where a chattel mortgage among other things provides that "the party of the first part does hereby assign, sell, transfer and set over to the party of the second part, the property described in the following schedule, to wit, the undivided two-thirds of forty acres of growing wheat, being all the wheat in and growing on what is known as the Old John Wise farm, on Gilmore creek, in Morris county, Kansas; provided, however, that if the said debt and interest be paid as above specified, this sale and transfer shall be void. The property sold is to remain in possession of the party of the first part until default be made in the payment of the debt or interest aforesaid, or some part thereof," the description therein is sufficient; and it is not necessary that the mortgage, in order to make it valid as to third parties, should designate in what manner the division of the growing wheat is to be made.

2. JURY; *Conclusive Finding.* The chattel mortgage purported upon its face to secure the payment of a promissory note executed to the mortgagee for $360. A third party, at whose instance a levy was made upon the mortgaged property, contended that the note and mortgage were given only to secure the mortgagee against loss from signing an appeal bond. The mortgagee claimed that the note and mortgage also included a store account of $92.50. The jury accepted the latter claim as the correct one, and as they were the exclusive judges of the facts from the testimony in the case, and of the credibility of the witnesses, their finding is conclusive.

3. FUTURE ADVANCES, *Not Covered by Mortgage.* A week or ten days after the execution of the note, secured by a chattel mortgage which was at once filed for record, and which note and mortgage were taken as security to save a mortgagee against loss from signing an appeal bond, and also as security for a store account of $92.50 then due, a parol agreement was entered into between the mortgagor and mortgagee, that the note and mortgage should also be held as security for future advances from the store of the mortgagee. And upon this subsequent parol agreement, $17.48 was obtained by the mortgagor from the store of the mortgagee. *Held,* That the mortgage could not be extended to cover advances not contemplated at the time of its execution, as against a creditor of such mortgagor, and that therefore the future advances under the parol agreement, subsequent to the execution of the mortgage, were not secured thereby.

4. REPLEVIN—*Plaintiff not to be Charged with Certain Costs.* Where a sheriff levies upon wheat growing in the field belonging to A, under an execution held against the property of B, and then obtains possession of

the property without the consent of A, and harvests, stacks and threshes the same, and thereafter A brings his action in replevin to recover the possession thereof, the law does not require A to pay or tender to the sheriff the cost or expense of harvesting, stacking and threshing the wheat, nor can A be charged with said costs or expenses.

### Error from Morris District Court.

REPLEVIN, brought by *Mead* against *Sims*, as sheriff of Morris county, and another, to recover certain wheat. Judgment for plaintiff at the April Term, 1882, of the district court. Defendants bring the case here. The opinion states the facts.

*Ed. S. Waterbury*, for plaintiffs in error.

*Johnston & Bertram*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action of replevin, brought by the defendant in error, Lewis Mead, against John Sims, sheriff of Morris county, one of the plaintiffs in error, to recover two hundred and thirty-four bushels of wheat, which Sims as sheriff had levied upon, under an execution in favor of the Emporia National Bank, against George B. Wilcox and Charles H. Wilcox. Mead claimed possession of the wheat under and by virtue of a chattel mortgage executed to him on March 24, 1881, by George B. Wilcox. The mortgage purported to secure a promissory note for the sum of $360, due thirty days after date, bearing interest at twelve per cent. per annum, executed by George B. Wilcox to the order of Lewis Mead, and was filed with the register of deeds of Morris county on March 25, 1881. After the commencement of the action, the Emporia National Bank was made a party defendant. A trial was had before the court with a jury, and a verdict and judgment rendered in favor of Mead.

I. It is contended that by reason of the failure of the chattel mortgage to designate in what manner the portion of the wheat which was mortgaged was to be separated and ascertained, and because the mortgage did not designate whether

it meant two-thirds of the acres of wheat, or two-thirds of the shocks of wheat, or otherwise designate the particular two-thirds upon which the lien was intended, it cannot be enforced against the creditors of the mortgagor. The provisions in the mortgage, among other things, are:

"Now, therefore, in consideration of said indebtedness, and to secure the payment of the same as aforesaid, the party of the first part does hereby sell, assign, transfer and set over to the party of the second part, the property described in the following schedule, to wit, the undivided two-thirds of forty acres of growing wheat, being all the wheat in and growing on what is known as the Old John Wise farm, on Gilmore creek, in Morris county, Kansas: . . . provided, however, that if said debt and interest be paid as above specified, this sale and transfer shall be void. The property sold is to remain in the possession of the party of the first part until default be made in the payment of the debt and interest aforesaid, or some part thereof."

We think within the authorities, that the description in the mortgage is sufficient, and that it was not absolutely necessary therein to designate in what manner the division of the growing wheat was to be made. (*Potts v. Newall,* 22 Minn. 561; Jones on Chattel Mort., §§ 142, 143; *Brown v. Holmes,* 13 Kas. 492; *Shaffer v. Pickrell,* 22 Kas. 619; *Howell v. Pugh,* 27 Kas. 702.)

II. It is also contended that the consideration for the mortgage had been fully satisfied, and that no indebtedness was secured thereby at the date of the levy. On the part of plaintiffs in error, one J. W. Simcock testified that on the date of the mortgage, witness went with Wilcox to Mead's store and proposed if Mead would, as surety for Wilcox, sign an appeal bond for a certain judgment against Wilcox before a justice of the peace in an action brought by one Shepherd, that Wilcox would indemnify Mead against his liability on the bond by a chattel mortgage on the wheat; and that by agreement Mead was to hold the note and mortgage described in the petition as security only against loss or damage for his signing the appeal bond. It was further shown that on the 15th day of December, 1881, and before the commencement

of this action, the attorney for Shepherd filed a written order in the district court to dismiss the case at Shepherd's costs; and also at the following term of the district court, Shepherd's attorney voluntarily took an order of dismissal of the case. In rebuttal, Mead testified that after it had been understood that he was to take the note and mortgage as security for signing the appeal bond, during the absence of the witness Simcock at the office of the justice of the peace, it was agreed between him and Wilcox that he should hold the mortgage also as security for the balance due him on a store account against Wilcox, amounting to $92.50; and that the consideration for the note and mortgage at the time they were executed was the securing of himself from liability on the appeal bond and his store account. Upon this evidence the court very fairly instructed the jury, and from the verdict it is apparent that they found that the note and mortgage embraced the store account, and that while Mead was discharged from all liability on the appeal bond by the proceedings had in the action of Shepherd against Wilcox in the district court, the store account was unpaid. As there was sufficient evidence to sustain the verdict of the jury, we cannot say that the indebtedness mentioned in the mortgage never had a real existence, or that it had been fully satisfied. Counsel cites a large number of authorities concerning the impropriety of substituting a different condition by parol evidence from that which is expressed in a mortgage, but these authorities do not apply. Upon the evidence, the note and mortgage were given to secure Mead from loss by his signing the appeal bond and the store account then due and unpaid. The note and mortgage embraced both, and therefore in permitting Mead to testify to the consideration for which the note and mortgage were given, he was not thereby permitted to vary or contradict by parol evidence the mortgage. The question before the court was as to the consideration of the note and mortgage. One party contended that it embraced only security against loss from signing the appeal bond; the other party claimed it also included the store account. The jury accepted the latter claim

as the correct one, and as they were the exclusive judges of the facts from the testimony in the case, and of the credibility of the witnesses, their finding is conclusive. (Herman on Chattel Mortgages, § 60, p. 126.)

III. Mead testified that about a week or ten days after the mortgage had been given, Wilcox came into his store, and he remarked to him "that his account was running up to be pretty large, and he wanted to know if it would be the understanding between them that the note and mortgage should be held for such goods as he was getting at the time, and might get along thereafter." That Wilcox said "Yes," and that such was the understanding. At the time of the execution of the note and mortgage, $92.50 only was due to Mead on the store account from Wilcox. The future advances upon the subsequent parol agreement amounted to $17.48. The evidence concerning these future advances, and the instruction authorizing the jury to find therefor, were all objected to. While there is some conflict in the authorities whether the intention to secure future advances must be expressed on the face of the chattel mortgage, or not, it seems to be well settled that a chattel mortgage cannot be extended to cover advances not contemplated at the time of its execution. (Jones on Chattel Mortgages, §§ 96, 98.)

IV. After the sheriff levied upon the wheat, he harvested, stacked and threshed it, at a cost of $202.45. He also hauled it to town and stored it. It was subsequently sold by him for $200.91—not enough to pay the expenses; and it is urged that as the expenses consumed the value of the wheat, Mead was not entitled to anything. The court instructed the jury, that in finding the value of the wheat, the market value of it at the time of the commencement of the action was to be taken, regardless of the expense of harvesting, threshing, and stacking. We perceive no error in this ruling. The sheriff had deprived Mead of the possession of his property without his consent, and he was entitled to recover his property or the value of his interest therein, without paying the charges

or other expenses claimed of him for the keeping, harvesting, or threshing the same.

In a case of trover, when the defendant's conduct, measured by the standard of ordinary morality and care, which is the standard of the law, is not chargeable with fraud, violence, willful negligence, or wrong, the value of the property taken and converted is the measure of just compensation. (Wells on Replevin, § 617.) But in a case of replevin, if the law permits the action, the plaintiff is entitled to recover the specific personal property described in his petition, or in the case of a mortgagee, the debt and interest secured thereby. And where the defendant gives a redelivery bond, and the delivery cannot be had to the plaintiff, the plaintiff is entitled to recover the value thereof, as well as his damages for the detention; or in a case like this, his debt and interest. In this case, Mead, without making any demand, was entitled to the possession of the wheat which had been levied upon by the sheriff. (*Shoemaker v. Simpson,* 16 Kas. 52.) Prior to the commencement of his action, it was not necessary for him to tender any charges or expenses to the said sheriff; and it not being necessary for him in the first instance to make such a tender, or pay therefor, he could not be compelled thereafter to pay the expenses incurred by the sheriff in harvesting and taking care of the wheat.

V. Upon the trial, one E. S. Bertram was permitted to testify as to the contents of a lease executed by George B. Wilcox, to the owner of the premises upon which the wheat was grown. There was no sufficient foundation laid for the introduction of evidence of this character, and therefore the contents of the lease were improperly received. We do not think, however, that this evidence was very material; and if the district court had not received improper evidence concerning the future advances furnished upon a parol agreement subsequent to the execution of the mortgage, and had not given an erroneous instruction thereon, the judgment would not be disturbed. For these latter errors, however, the judgment of the district court must be reversed.

All the Justices concurring.