[Civ. No. 2005. Second Appellate District.—October 12, 1916.]

PATRICK J. HARTNETT, Respondent, v. JOHN C. WILSON et al., Copartners, etc., Appellants.

CONTRACT FOR PURCHASE OF STOCKS ON MARGIN—PLEDGE TO SECURE BROKERS — ACTION TO RECOVER PLEDGED PROPERTY — PLEADING— SUFFICIENCY OF COMPLAINT.—In an action in replevin to recover certain certificates of stock and a certain bond deposited with a firm of stockbrokers engaged in the business of buying and selling stocks and bonds on margin, and otherwise, as collateral security for any debt that might accrue from the plaintiff to the defendants on account of any loss caused by reason of any contract that plaintiff might make with defendants whereby defendants might purchase of or for, or sell to or for, plaintiff, on margin, shares of the capital stock of various corporations, the complaint states a cause of action where it is alleged that in none of the various contracts entered into was there any intention on the part of either party that there should be delivery of the shares of stock bought or sold, but that only the difference between the contract price and the market price of said shares should be paid, and only such difference was ever paid.

ID.—EVIDENCE — UNLAWFUL CHARACTER OF TRANSACTIONS — GENERAL QUESTIONS—LACK OF PREJUDICE.—In an action to recover the possession of such certificates and bond, the defendants are not prejudiced by the rulings of the court in permitting the plaintiff to show the character of many of the transactions in a general way, where previous thereto a great deal of evidence had been received covering particular details of many of the transactions, showing their unlawful character.

ID.—RULES OF NEW YORK STOCK EXCHANGE—PROOF PROPERLY EXCLUDED.—The rules of the New York Stock Exchange in regard to buying and selling stock are properly excluded in such an action, where there was no evidence that the defendants were members of such exchange, or transacted any of the plaintiff's business through it.

Id.—VALUE OF PROPERTY—TIME OF DEMAND FOR DELIVERY.—The value of the property involved in such an action is to be computed according to its value at the time when demand for delivery was made, and not as of the date of the original deposit.

Id.—TRIAL—REFUSAL OF CONTINUANCE—DISCRETION NOT ABUSED.—It is not an abuse of discretion to refuse a continuance of the trial at the close of the plaintiff's evidence in order to permit the defendants to obtain evidence to meet the amendment made to the plaintiff's complaint on the day of trial, which showed that the dealings were to include cotton, as well as corporate stock, in the absence of any showing that the witness whose attendance was required would or could testify as to the lawful character of the cotton transactions.

Id.—APPEAL—BANKRUPTCY OF APPELLANTS PENDING DETERMINATION—RIGHTS OF RESPONDENT.—Upon an appeal taken from the judgment and order denying a new trial in such action, the right of the respondent to have the appeal determined is not affected by the bankruptcy of the defendants pending the appeal, and if the appeal be affirmed, the plaintiff is entitled to recover the property or to assert his rights under the appeal bond.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

Hartley Shaw, for Appellants.

Arthur Wright, for Respondent.

CONREY, P. J.—This is an action of replevin brought by the plaintiff to recover certain certificates of stock and a certain bond, alleged to be his property, in possession of the defendants and unlawfully detained by them. The defendants were partners doing business under a firm name as stockbrokers engaged in the business of buying and selling stocks and bonds on margin and otherwise. The complaint shows that on July 30, 1912, a series of transactions began between the plaintiff and the defendants wherein, as it is alleged, contracts were made between the parties, whereby the plaintiff employed the defendants to purchase for him shares of the capital stock of corporations on margin, without any intention on the part of either of the parties for delivery of the shares sold or bought, and without any actual delivery of such shares

or any agreement for such delivery. It is alleged that each of said contracts provided that only the difference between the contract price and the market price of said shares on divers days should be paid, and only such difference was ever paid. On the day of trial of this action the complaint was amended so as to show that the transactions included purchases and sales by the defendants as principals, and included bales of cotton as well as corporation stock.

On several dates, beginning on August 8th, the plaintiff deposited with defendants the certificates and the bond, one at a time, until all of them had passed to the possession of defendants. It was alleged that the property was deposited as collateral security for any debt that might accrue from the plaintiff to defendants on account of any loss caused by reason of any contract that plaintiff might make with defendants whereby defendants might purchase of or for, or sell to or for, plaintiff, on margin without intention to deliver, shares of the capital stock of divers corporations, or bales of cotton; that since said delivery of the certificates and bond plaintiff has entered into divers verbal contracts with defendants whereby the plaintiff sold to or for defendants, and divers other verbal contracts whereby the plaintiff purchased of defendants shares of the capital stock of corporations or bales of cotton on margin; that in each instance and in every case and as agreed to in each of said contracts, there was no intention either on the part of the plaintiff or on the part of the defendants to deliver by the party selling or to receive by the party purchasing any of said shares or bales of cotton, and no shares of capital stock or bales of cotton were ever delivered by plaintiff to defendants or by defendants to plaintiff, as the case might be, and no agreement was ever made for such delivery or receipt; that each of said contracts provided that only the difference between the contract price and the market price of said shares or bales of cotton on divers days should be paid and only such difference was ever paid; that said certificates and bond were deposited with the defendants for no other purpose than as so stated. By their answer the defendants raised issues upon the material allegations of the complaint, both as to the ultimate facts and the evidentiary facts thus pleaded, other than as to plaintiff's ownership and deposit of the certificates and bond. The case was tried upon those issues with resulting findings and judgment in favor of

plaintiff, awarding to plaintiff possession of each of said certificates and said bond; it being further provided in each instance that if delivery or return of the property cannot be had, plaintiff should recover the value thereof as stated in the judgment. These values were severally stated and in the aggregate amounted to $5,017.50. The defendants appealed from the judgment and from an order denying their motion for a new trial.

It is not disputed that the complaint states facts sufficient to entitle the plaintiff to recover. (*Willcox* v. *Edwards,* 162 Cal. 455, [Ann. Cas. 1913C, 1392, 123 Pac. 276]; Cal. Const., art. IV, sec. 26.) Appellants also admit that the evidence is sufficient to justify the court in finding that all of the transactions involved were of the character alleged, except those involved in the account of one M. T. Zorn. We are satisfied, however, that the Zorn transaction was like the others. The defendants maintained an office in the city of Los Angeles in which they kept a blackboard for market quotations and maintained a telegraph operator, a manager, a bookkeeper, and agents for soliciting business. One of these agents, Mr. C. H. Marshall, introduced the plaintiff to that place of business, and suggested that there was a chance for plaintiff to make some easy money there by buying stock on margin. Upon being informed that plaintiff had never done business of that kind, Marshall compared it to horse-racing. He said: "It is just about the same as making a book. You bet that the stock will either go up or down. If you bet it goes up and it goes up, you win the equivalent of what you bet or what you buy." The transactions which followed, and which are set forth at great length in the record as occurring between the plaintiff and the defendants, were of the nature thus described and nothing else. After the plaintiff had invested a few hundred dollars there came a time when he was called upon for more cash to protect his margins, but did not have the money. In lieu of cash the defendants accepted from plaintiff the certificate for ten shares of Northern Pacific Railroad stock as collateral for plaintiff's account. The other deposits were made from time to time under like circumstances.

At the office of defendants the plaintiff was made acquainted with Mr. Zorn. Plaintiff's testimony concerning Zorn is not disputed and in substance is as follows: "He had some deals on there in corn, and they were calling him for

two hundred dollars. He asked me if I would give him a loan, or he would lose a whole lot of money, he claimed. I brought this certificate up the next morning and I told Mr. Marshall to protect this corn.'' It is unnecessary to follow this matter through its devious course wherein the Zorn account was manipulated and shifted into plaintiff's name and the deposited shares of stock used for purposes not intended or authorized by the plaintiff. In further discussion of the case we will make no further separate mention of the Zorn transaction.

Appellants next contend that since the burden was on plaintiff to show the unlawful character of the transactions, and since there were many of those transactions, the court erred in allowing the plaintiff to make this proof in a wholesale manner and by general questions, for if any of these were lawful transactions and indebtedness arose out of them, defendants were entitled to hold plaintiff's collateral therefor. A great deal of evidence was received covering particular details of the several transactions, including numerous statements in writing made by the defendants. The character of the business of the defendants was thus thoroughly exposed to view. The facts as to the manner in which the business was done were almost wholly within the knowledge of the defendants and were not known to the plaintiff. This is peculiarly true of that portion of these transactions well along toward the end of them, when (the plaintiff then being ''ahead of the house'') the defendants got the plaintiff drunk for three days, during which time numerous transactions occurred, and then or soon thereafter nearly all of the ''losses'' occurred whereby they claimed that his collateral had been absorbed. The principal objection made by appellants under this head is to the following question put to the plaintiff by the court: ''Subsequent to the time that you put up these collaterals was there ever any stock you owned sold by them for you in Los Angeles or anywhere else, after you put up these collaterals?'' to which the plaintiff answered, ''No, sir.'' Objection was made that the question was too general and called for the conclusion of the witness. This matter must be considered in the light of occurrences immediately preceding the asking of this question, as shown in several pages of the transcript. Plaintiff's showing of facts had progressed to a point where it was appropriate for the court

to intervene for the purpose of shortening the record and saving a large waste of time which would be consumed in proving the details of many transactions of apparently the same character. If any of those transactions were of different character and involved actual and legitimate sales, it would have been an easy matter for the defendants to point out the transactions upon which they relied to protect their claim to these collaterals. But this they did not do, and we are unable to see that the defendants were prejudiced by the ruling of the court.

The defendants called as their witness at the trial one Ellis M. Harris, who on and after November 1, 1912, was the manager of their Los Angeles office, and propounded to him the following question: "Do you know what the rules of the New York Stock Exchange are in regard to buying and selling stock?" Objection to this question was sustained, and was properly sustained, unless the rules of that exchange were in some way material and of benefit to the defendants. Some of the statements of account furnished by the defendants to the plaintiff contained a statement in the following form: "It is agreed between broker and customer: 1. That all transactions are subject to the rules and customs of the New York Stock Exchange and its clearing-house." There is no evidence that the defendants were members of the New York Stock Exchange, or transacted any of the plaintiff's business through that exchange, and if we may suppose that the rules of the New York Stock Exchange prohibit mere gambling and fictitious transactions, that fact would be of no value to the defendants if, in truth, the transactions between them and the plaintiff were not conducted in accordance with those rules. Neither at the time when the foregoing question was asked of the witness Harris, nor at any other time, was evidence offered tending to show that in any instance there was a genuine purchase by the plaintiff or a genuine sale by him. It is true that, referring to two or three orders received from the plaintiff, Mr. Harris testified that the orders were transmitted to New York, that the orders were executed and that the cotton mentioned was bought; but there is nothing to show that the word "bought" was used in any other sense than in the multitude of other transactions in which that word was current in the business of defendants. Harris admitted that never in his experience as an employee of the defendants did

he know of cotton being actually delivered. As a specific instance: In referring to the last five hundred bales of cotton "bought" for the plaintiff (and which previously had been "sold" for him), the amount involved would be about sixty thousand dollars, and he said: "We did not get sixty thousand dollars from anybody, nor deliver any cotton at all." "Q. Isn't it true that those losses were merely differences between different days of the price of cotton? A. Different prices at which he bought and sold cotton." He said that the contracts were held by their correspondent in New York; and that he did not know whether plaintiff knew or not that there was any such transaction. Under the circumstances shown by this and by all of the evidence in the case, it is manifest that any rules of the New York Stock Exchange, whatever they might be, could not affect the plaintiff's rights in this case.

Appellants contend that the court erred in its findings as to the value of the property involved. At the trial an attempt was made by the attorneys for the respective parties to agree upon these values. Plaintiff's attorney claimed that he was entitled to the value of the property as of the dates when the certificates and bond were deposited. Defendants' attorney claimed that the value should be taken as of December 17, 1912, the day when plaintiff made his demand for their return to him. As to the latter date, defendants' answer admitted values amounting to only $4,848.75. The answer of defendants had admitted values at the date when the properties were deposited by the plaintiff with the defendants, which admitted values in the aggregate amounted to $5,017.50, or $168.75 more than the values at the time of the demand. The court in its decision adopted the larger figures, proceeding evidently upon the theory that the value should be fixed as of the earlier dates. Appellants now contend that the court's findings as to values are wholly without support in the evidence, because there is no evidence of the value of the property at the time of the trial, which they now for the first time contend is the time for which the values should have been fixed. It is provived by the Code of Civil Procedure, section 667, that "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention." As no damages for the detention of the property

were allowed, that element need not be considered. It is said that there is only one decision upon this precise point. In *Phillips* v. *Sutherland,* 2 Cal. Unrep. 241, [2 Pac. 32], it was held that in an action of this kind, where the judgment is in the alternative, the value of the property should be fixed as of the day of the trial as being nearest to the time when the property would be delivered. Under the stipulations made as above stated, we do not think that the losing party should be allowed on appeal to object for the first time that the findings are wholly unsupported by the evidence. In substance he conceded that on any theory of the case the values to be found by the court would amount to at least $4,848.75. So far as this matter is concerned, the only relief to which he should be entitled would consist in reducing the amount of the judgment by deducting therefrom the sum of $168.75. This may the more readily be done because, unless controlled by the decision above cited, it is our opinion that the value of the property at the time when demand for its delivery was made is the value which should prevail.

It is contended by appellants that the court erred in refusing to allow a continuance at the close of the evidence presented on behalf of the plaintiff. When the plaintiff presented his amendment to the complaint at the beginning of the trial, the defendants made no objection thereto, but stated that they would desire to have a continuance. The court responded that the plaintiff might introduce his evidence, and that whenever it became necessary in the interest of fair play to get the defendants' evidence on the transactions in cotton, the court would adjourn the trial of the case for such time as was necessary. After the plaintiff had rested his case, the attorney for appellants stated that on account of the cotton transaction having been received as part of the evidence, he would want further time before he could finish putting in his defense; that it would be necessary for the defendants to show that the deals in cotton were actually made, and he was not prepared to produce such evidence at that time. He said that the man Marshall was not then in the employment of the defendants, and they had no means of communicating with him, and did not know whether they could find him or not. He said he wanted to prove that the cotton deals were actually carried out on the New York exchange; that there was a telegraph line from their office to New York, and messages were

received in New York about this cotton, and the cotton was bought and sold according to the order and report got back to Los Angeles and given to the plaintiff. Upon suggestion of defendants' attorney that he could put the evidence in the form of an affidavit, the court stated: "It is not necessary. I am assuming every word you say to be true, and no affidavit is necessary; but I say, assuming all that you have said to be correct, I do not see any reason for a continuance." The following also occurred: The Court: "But you don't claim that this man ever owned any cotton in his life, or put up one cent of money as the purchase price of the cotton?" Defendants' attorney: "It does not make any difference whether he ever owned any cotton in his life or not. The court has stated that it is perfectly legal to make a contract to sell something he hasn't got." Thereupon, the continuance having been denied, the defendants introduced the testimony of several witnesses. One of them, the witness Harris, manager of the office of defendants, referred to the cotton deals as follows: "Two or three days after I came to Los Angeles [which would be two or three days after November 1, 1912], I asked Mr. Hartnett for some more money to protect us on some cotton that we were carrying for him; he told me he wouldn't be able to take care of it at that time, and we bought in five hundred bales, I think, November 6th, and I told him we would put a stop loss order on the remaining five hundred bales at 1215. I told him it would be bought in when it reached 1215. He said if it would go up there, it would have to be closed out, if it reached that point before he heard from the east. He made no objections to my closing it out. That is one of the two cotton transactions I spoke of before. The other one is the one we bought in the day I first spoke to him about margin, because he said he didn't have any money, and he would lighten up his load by buying in half his commitments, which was five hundred bales. These two days were about five days apart, I think. The day he told me we had better lighten up his load by buying five hundred, I entered an order to buy five hundred bales January cotton at the market. It was bought. The other time there was an order entered with our New York correspondent to buy if it reached a certain point. That was bought too at 1215." Defendants made no further attempt than as above shown to prove the good faith and reality of their transactions with plaintiff.

Let the statements made by defendants' attorney be treated as a substitute for an affidavit; they nevertheless were not sufficient to require that the court grant a continuance. It was not stated that Mr. Marshall could or would testify to the facts referred to by the attorney; nor that other witnesses upon whom the defendants must rely were not within call on the day of the trial. For aught that appears, the defendants themselves were then in court or at their office in Los Angeles. It may be that books, contracts, and other documents were in the hands of the defendants which, together with testimony of defendants or of their bookkeepers and other agents in the city where the case was on trial, would have proved all of the facts covered by the statement made in connection with the application for a continuance. Moreover, the allegations of fact introduced into the case by the amendment of the complaint at the day of the trial were all of evidentiary matter which would have been provable in the case without such allegations. This was an action for the recovery of personal property wherein the plaintiff had alleged all the facts necessary to a complaint in that kind of an action, including the facts of ownership by the plaintiff and his right to immediate possession and the wrongful possession by the defendants, the demand for a return of the property and refusal thereof. The defendants were fully acquainted with the facts upon which the determination of the case must depend and adequately warned of the nature of the plaintiff's claims. Our conclusion is that the refusal of a continuance under the circumstances shown did not constitute an abuse of the discretion vested in the court as to that matter.

In addition to the foregoing matters directly involved in the appeals herein, we are required to consider a motion presented by counsel for appellants whereby they ask for an order staying all proceedings in the action on the ground that since the rendition of the judgment appealed from, and since the time of the appeal, the defendants have been duly discharged in bankruptcy. The motion is accompanied by a certified copy of an order duly made in the district court of the United States for the Northern District of California, discharging the defendants from all debts and claims provable under the acts of Congress relating to bankruptcy, and which existed on the seventh day of November, 1914, when the petition for adjudication of bankruptcy against them was filed; with the usual

exceptions, none of which require attention at this time.
Respondent in reply to the motion shows that the appeal from
the judgment herein was taken and a stay bond filed by appel-
lants on the sixteenth day of July, 1913, which was about six-
teen months prior to the commencement of the bankruptcy
proceedings. That an undertaking was given as required for
a stay of proceedings under section 943 of the Code of Civil
Procedure, and was conditioned that the defendants will obey
the orders of the appellate court upon the said appeal. Re-
spondent concedes that this court may appropriately make an
order perpetually staying execution as against the appellants
themselves; but insists that he is entitled to an affirmance of
the judgment in order that he may prosecute his rights under
the bond. That he is so entitled, and that an action may be
maintained upon such bond, we do not doubt.

Regardless of the suggestion thus made with respect to the
existence of a stay bond, we also think that appellants are not
on this motion entitled to anything more than is thus con-
ceded to them by counsel for respondent. The principal ob-
ject of the judgment was to enforce the plaintiff's right to
have certain personal property restored to his possession. If
that property remains in the possession or under the control
of the defendants, it may be redelivered to the plaintiff, in
which event the alternative money judgment would be of no
consequence. We are not aware of anything in the bank-
ruptcy proceedings which would prevent such return of his
property by the defendants to the plaintiff. The respondent
is entitled to a determination of this appeal, so that if the
judgment be affirmed he may recover that property; and since
the condition of the bond was that the defendants would obey
the order of this court upon the appeal (which upon an affirm-
ance of the judgment would in substance be an order for the
return of the property), we see no reason why the respondent
is not equally entitled to a determination of the appeal so that
if the judgment be affirmed he may assert his rights with re-
spect to that bond. All the protection to which the appellants
are entitled by reason of a discharge in bankruptcy will be
obtained by them under an order perpetually staying proceed-
ings by execution or otherwise, against them, to realize upon
the alternative money judgment which was rendered against
them.

The order denying defendants' motion for a new trial is affirmed. The judgment is modified in that portion thereof providing for the amount to be recovered in case a delivery or return of the property cannot be had, by substituting for the sum of $1,287.50 the sum of $1,200; and for the sum of $1,270 the sum of $1,250; and for the sum of $1,460 the sum of $1,398.75; and for the aggregate sum of $5,017.50 the sum of $4,848.75. As thus amended, the judgment is affirmed; without prejudice to the right of appellants to apply to the superior court for an order perpetually staying execution as against them, upon those parts of the judgment which provide for recovery by the plaintiff against the defendants of any sum or sums of money in case a delivery or return of the described personal property or any thereof cannot be had.

James, J., and Shaw, J., concurred.