[No. 24872. Department Two. April 9, 1934.]

SEABOARD SECURITIES CO., INC., *Respondent and Cross-appellant,* v. STEPHEN BERG, *Defendant,* INTER-NATIONAL & INDUSTRIAL SECURITIES COR-PORATION, *Appellant.*[1]

[1]Reported in 31 P. (2d) 503.

204

*Bausman, Oldham, Cohen & Jarvis* and *Simon Wampold, Jr.,* for appellant.

*Grinstead, Laube, Laughlin & Meakim, Frank A. Garbe,* and *Roberts, Skeel & Holman,* for respondent and cross-appellant.

BLAKE, J.—This case has been here before. *Seaboard Securities Co. v. Berg,* 170 Wash. 681, 17 P. (2d) 646. Since a comprehensive statement of the facts out of which the litigation arose is contained in the former opinion, only such facts will be stated here as are necessary to dispose of the contentions made on this appeal. The only parties now interested are the plaintiff, Seaboard Securities Company, and the intervener, International & Industrial Securities Corporation. Since both have appealed from the judgment entered in the court below, we shall refer to them as "plaintiff" and "intervener."

In June, 1927, Stephen Berg purchased from Albert Pick & Company, under conditional bill of sale, a large quantity of furniture, which went into the Bergonian hotel, in Seattle. The conditional bill of sale contained a covenant on the part of Berg that he would not incumber the furniture or permit any liens or encumbrances to accrue against it without the consent of the

vendor. In 1928, Berg mortgaged his interest in the furniture to plaintiff. About May 1, 1930, Berg turned the hotel and furniture over to plaintiff.

Plaintiff commenced this action to foreclose its chattel mortgage on May 24, 1930, joining as a party defendant Albert Pick & Company, the vendor under the conditional bill of sale to Berg. In the meantime, Albert Pick & Company had assigned its vendor's interest in the contract of conditional sale to the intervener. This assignment was not filed. Neither Berg nor plaintiff had notice of the assignment until August, 1931, when the intervener filed its complaint in intervention, setting up an action in replevin.

On the former trial, judgment was entered foreclosing plaintiff's mortgage and dismissing the complaint in intervention. As appears from the opinion on the former appeal, the trial court predicated its judgment upon two theories: (1) That the conditional bill of sale was a defective chattel mortgage; and (2) that the complaint in intervention should be dismissed in any event, because the intervener had not made any demand on plaintiff for the return of the property. The intervener appealed. This court reversed the judgment, holding the conditional bill of sale effective as such, and holding further that demand was not a prerequisite to intervener's right to maintain its action in replevin. The cause was remanded, "with instructions to the trial court to proceed to hear evidence upon the question of damages to appellant and enter its judgment therefor." From judgment for damages entered pursuant to the remand, both plaintiff and intervener appeal.

We shall first discuss the questions raised by the intervener's appeal. The court adopted as a measure of damages the depreciation in the value of the property during the period of unlawful detention. The

property was surrendered to intervener in January, 1933, at which time the court found its value to be twelve thousand dollars. Neither party raises any question as to this valuation.

The court found that the unlawful detention commenced August 7, 1931, the day intervener filed its complaint in intervention, and therefore determined the value of the furniture as of that date, for the purpose of ascertaining the amount of depreciation. The valuation so found was $22,125. The depreciation in the market value of the furniture was, therefore, found to be $10,125. The judgment entered, however, was for $7,849.19. This amount was arrived at by adding interest, at the rate of six per cent per annum, on $22,125 from August 7, 1931, to $10,125, and deducting therefrom the sums of $1,200 and $3,100, with interest, on account of repairs made and taxes paid on the property by plaintiff.

The intervener complains of this judgment on three grounds: (1) That the court should have fixed the valuation of the property as of May 1, 1930, for the purpose of determining the amount of depreciation, rather than August 7, 1931; (2) that no deductions should have been allowed on account of repairs made and taxes paid on the furniture by plaintiff; and (3) that, in any event, the evidence showed the value of the furniture to be much greater than $22,125 on August 7, 1931. We shall discuss these contentions in order.

It is contended that the opinion on the former appeal established the law of the case with respect to the time the wrongful detention commenced. This contention is based on the following language contained in the opinion:

"The act of executing the mortgage and delivering possession to respondent amounted to a conversion."

If this language means that the possession of plaintiff was wrongful in its inception, then the contention must be sustained. For where the original taking of property is tortious, its valuation for the purpose of the alternative money judgment is to be determined as of the date of the taking. Wells on Replevin (2d ed.), § 534; *Armour v. Seixas,* 80 Wash. 181, 141 Pac. 308. But where the original taking is not tortious, such valuation is to be determined as of the date of demand. *Hartnett v. Wilson,* 31 Cal. App. 678, 161 Pac. 281; *Jones v. Bank of Commerce,* 131 Ark. 362, 199 S. W. 103; *Hutson v. Bassett,* 35 S. W. (2d) (Tex. Civ. App.) 231; *Anglo-California Trust Co. v. Collins,* 192 Cal. 315, 219 Pac. 982; *Brigham v. Thrailkill,* 166 Ark. 548, 266 S. W. 958.

In Wells on Replevin, § 534, the rule is stated as follows:

"If the taking was rightful, originally, and the defendant refuse to deliver, on request, his detention from that moment is wrongful, and damages should be assessed from that time."

While the rule has not been specifically invoked by this court, it was indicated to be the correct rule in the case of *American Packing Co. v. Luketa,* 115 Wash. 1, 196 Pac. 1, 22 A. L. R. 206.

The importance of the rule is apparent in this case, since there was a very great depreciation in the market value of the furniture between May 1, 1930, when plaintiff took possession, and August 7, 1931, when intervener made its demand by filing its complaint in intervention.

In the absence of the above quoted language from the opinion on the former appeal, it would hardly be contended that the taking of possession of the property by plaintiff was, in its inception, tortious. It is only when such language is lifted from its context that

it is susceptible of the contention that plaintiff's possession was tortious from the beginning. For, when read in the light of the issue the court was deciding, and in connection with the full discussion of that issue, it is quite apparent that the word "conversion" was not used in its conventional sense of a tortious taking. The issue was whether a demand for possession was a prerequisite to intervener's right to maintain its action in replevin. The whole argument, holding that such demand was not necessary, is predicated upon specific clauses in the contract of conditional sale, according the vendor the right of immediate possession under certain stipulated conditions. It was held demand was unnecessary, not because the original taking was tortious, but because it was rendered unnecessary by the terms of the contract.

Since the detention, then, became wrongful only by plaintiff's refusal to comply with intervener's demand for possession, the court was correct in fixing the value of the property as of August 7, 1931, for the purpose of ascertaining the amount of depreciation.

■ We think the court erred in allowing plaintiff the sums of twelve hundred dollars and thirty-one hundred dollars, on account of repairs made and taxes paid by it during the time the property was in its possession. This is not a case that calls for the application of the doctrine of accession. 1 Cooley on Torts (4th ed.), § 38. The expenditures were necessary to the plaintiff's own enjoyment and use of the property. Had it not paid the taxes, it would have lost the property through distraint. Had it not made the repairs, the property would have been less useful to it.

One is entitled to recoup as for accessions to another's property only where his appropriation was accidental or through mistake, and he has in good faith performed labor on the property which has trans-

formed its character and rendered its original value insignificant as compared with the new product. *Isle Royale Mining Co. v. Hertin,* 37 Mich. 332, 26 Am. Rep. 520; 1 Cooley on Torts (4th ed.), § 38. But where the identity of the property remains the same, and the accessions to it are merely incidental to its use by the appropriator, the owner is entitled to recover the property as improved, or its full value without deduction for any labor bestowed upon it. *Cunningham v. Metropolitan Lumber Co.,* 110 Fed. 332; *Sims v. Mead,* 29 Kan. 124; *Gray v. Robinson,* 4 Ariz. 24, 33 Pac. 712.

Furthermore, it seems to us that the items are effectually allowed in fixing the value of the property at twelve thousand dollars at the time it was returned to intervener. Obviously, the value of the property at that time would have been less, in the aggregate of those amounts, had not the repairs been made or the taxes paid.

 It is contended that the value of the property fixed by the court as of August 7, 1931, is not supported by the evidence. The testimony relating to the value of the property at various dates to which inquiry was directed is extremely involved. All the testimony seems to be predicated upon the original cost of the property in 1927 as being its true value as of that date. Estimates of value at subsequent dates were arrived at through the application of percentages of depreciation. Two factors entered into the percentages used: (1) Ordinary wear and tear, and (2) extraordinary depreciation due to the economic depression.

Again, estimates were made on the value of the furniture in the hotel as an integral part of the operating property. Then again, estimates of depreciation in terms of percentage were made to ascertain its value if removed from the hotel. For it is not ques-

tioned that the value of the furniture, removed from the hotel, is much less than in the hotel as an integral part of an active operation. The value fixed by the court as of August 7, 1931, was on the theory of its removal from the hotel, and not as a part of the operating property. This was the correct criterion. *Tanenbaumson & Co. v. Bauman & Co.*, 261 N. Y. 85, 184 N. E. 503, 86 A. L. R. 102. See also: *Nearhoff v. Rucker*, 156 Wash. 621, 287 Pac. 658.

While the valuation fixed by the court was not based on a direct statement of any witness, it was arrived at by computation based on positive evidence as to percentages of depreciation. Such a method obviously affords the basis of wide divergence of opinion as to value. For after all, the judgment is really the opinion of the court as to the value, based in turn upon the opinion of witnesses. We are concerned only as to whether the evidence supports that opinion as expressed in the judgment. We think it does.

What we have said relative to the manner in which the valuation of the property was arrived at disposes of one phase of plaintiff's appeal. It is plaintiff's contention that there was *no* evidence upon which a valuation could be determined as of August 7, 1931; that all of intervener's testimony referred to the value of the property as of May 1, 1930. This position is untenable, in view of the testimony we have just discussed.

The plaintiff further contends that it should not be charged with the extraordinary depreciation in the value of the furniture due to the economic depression. When one takes possession of the personal property of another, he does so charged with the knowledge that it is subject to fluctuation in market value. Such fluctuation may be great or small. Plaintiff could have escaped the risk of depreciation, ordinary and

extraordinary, had it surrendered the property on demand. Having failed to surrender the property on demand, it must be held accountable for the entire amount of depreciation. For it must be assumed, under the evidence in this case, that intervener demanded the property, not to hold, but for the purpose of resale. Consequently, had the property been surrendered on demand, and had it then been sold by intervener, the loss because of the alleged extraordinary depreciation would not have occurred.

The judgment is affirmed on plaintiff's appeal. On intervener's appeal, the judgment will be modified in accordance with the views herein expressed. The cause is remanded, with directions to the trial court to enter judgment accordingly.

BEALS, C. J., GERAGHTY, TOLMAN, and HOLCOMB, JJ., concur.

